**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-cv-23125-BLOOM/Torres**

TERESA NEEPER,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

## OMNIBUS ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

**THIS CAUSE** is before the Court upon two separate Motions. (1) Defendant Carnival Corporation ("Carnival") filed a Motion for Summary Judgment, ECF No. [34] ("Motion for Summary Judgment"). Plaintiff Teresa Neeper ("Plaintiff") filed a Response in Opposition, ECF No. [42], to which Carnival filed a Reply, ECF No. [47]. (2) Carnival also filed a Motion to Strike the Declaration of David Neeper, ECF No. [50] ("Motion to Strike"). Plaintiff filed a Response in Opposition to Defendant's Motion to Strike, ECF No. [57], to which Carnival filed a Reply, ECF No. [59]. The Court has considered the Motions, all opposing and supporting submissions,[1] the record, the relevant law, and is otherwise fully advised. For the reasons that follow, Carnival's Motion for Summary Judgment is denied, and Carnival's Motion to Strike is granted in part and denied in part.

---

[1] In support of its Motion for Summary Judgment, Carnival filed a Statement of Material Facts in Support of its Motion for Summary Judgment, ECF No. [33] ("SMF"). Plaintiff filed an Amended Statement of Material Facts in Opposition to Carnival's Motion for Summary Judgment (ASMF"), ECF No. [43]. Carnival filed a Response to Plaintiff's Additional Facts ("RSAMF"), ECF No. [48].

## I.     BACKGROUND

Plaintiff initiated this maritime personal injury action against Carnival on August 17, 2023.

ECF No. [1] ("Complaint"). The Complaint alleges two claims: negligent maintenance of a wet

floor hazard ("Count One"), and negligent failure to warn ("Count Two"). *See generally id.*

On January 16, 2023, Plaintiff and her husband began their ten-day vacation aboard

Carnival's ship, *Carnival Sunshine*. ECF No. [1] at ¶¶ 4-5. Plaintiff alleges that on January 18,

2023, Carnival "breached its duty of care [ ] by failing to repair a leaking hot tub on the ship's

Lido deck." *Id.* at ¶ 7. According to Plaintiff, the leak "caused a constant flow of water mixed with

sunscreen oil to flow out of the tub and out onto the Lido deck's floor" creating "an extremely

slippery hazard." *Id.* at ¶¶ 8-9. Because the leak from the hot tub was constant, the floor never had

a chance to dry. *See id.* at ¶ 9. Consequently, when "Mrs. Neeper walked on the Lido deck, she

slipped and fell on a wet and [allegedly] extremely slippery section of floor that had been made

wet by the leaking hot tub" and sustained various injuries. *Id.* at ¶¶ 10, 13. Plaintiff asserts Carnival

knew or should have known about the leak "as the tub had been leaking for hours before [Plaintiff]

slipped and fell." *Id.* at ¶ 11. Therefore, Carnival breached its duty of care by failing to either repair

the leak and clean up the water in a timely manner, or by failing to adequately warn Plaintiff "that

a hot tub on the ship's Lido deck had sprung a leak and was making the Lido deck's floor wet and

very slippery in some places." ECF No. [1] at ¶ 18.

In its Motion for Summary Judgment, Carnival requests that the Court grant summary

judgment on both Count One and Count Two of the Complaint. *See* Motion for Summary

Judgment, ECF No. [34] at 3. Carnival argues that it is entitled to summary judgment because (1)

Carnival had no actual or constructive knowledge of any allegedly dangerous condition; and (2)

Carnival's alleged failure to warn was not the proximate cause of Plaintiff's injuries because she

saw the puddle of water and appreciated the open and obvious danger before stepping into it. *Id.* Plaintiff responds that there is substantial evidence that Carnival had notice of the dangerous condition, including the length of time the water was leaking from the hot tub, the proximity of certain Carnival employees to the incident, the nightshift report on January 17, 2023, indicating that certain areas of Deck 9 needed special scrubbing, and the three prior slipping incidents disclosed by Carnival. *See generally* ECF No. [42]. Plaintiff further argues the record does not support Carnival's assertion that Plaintiff saw the puddle before she slipped and fell. Therefore, Carnival may not rely on her alleged observation of the puddle to argue that it was not the proximate cause of Plaintiff's injuries. *See id.* Moreover, even if Plaintiff did observe the puddle before she slipped, that does not mean the dangerous condition was open and obvious. *See id.* at 6-7. Plaintiff argues that even after observing the water pooled at the base of the stairs, a reasonable person would not have been apprised of the unreasonable slipperiness of this particular puddle. *See id.*

In response to Defendant's Motion for Summary Judgment, Plaintiff filed the Declaration of her husband, David Neeper. *See* ECF No. [40-1]. In its Motion to Strike, Carnival contends that David Neeper's Declaration must be stricken from the record because (1) the Declaration is a sham affidavit, and (2) Plaintiff failed to comply with the Rule 26 disclosure requirements as Plaintiff never filed an initial disclosure and Plaintiff's response to Carnival's interrogatories was insufficient. *See* Motion to Strike, ECF No. [50]. Plaintiff responds that the sham affidavit rule does not apply because Mr. Neeper's Declaration is consistent with the Complaint, her deposition, and her subsequent disclosures. *See* ECF No. [57] at 3-4. Plaintiff also contends that there has been no Rule 26 violation because she timely served her initial disclosure on Carnival, any deficiency

in the disclosures was harmless, and Carnival's Rule 26 objections were raised too late. *See generally id.*

## II.    STATEMENT OF MATERIAL FACTS

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

On January 16, 2019, Plaintiff and her husband, David Neeper (together, "the Neepers"), embarked on a ten-day cruise aboard the *Carnival Sunshine*. *See* SMF ECF No. [33] at ¶ 1. On "a bright and clear day" at around 2:05 p.m. on January 18, 2024, "Plaintiff slipped and fell on an exterior deck of the *Carnival Sunshine*." *Id.* ¶¶ 2-3. The incident occurred in an area in front of a three-step staircase leading to a three-tiered stadium-styled seating area. *See id.* at ¶¶ 4-5.

Prior to the incident, the Neepers were sitting in lounge chairs in the seating area on the deck level containing a jacuzzi. *See id.* at ¶ 6.[2] Although Plaintiff cannot personally recall how long she and her husband lounged in the seating area before the incident, it was "quite a while." *Id.* at ¶ 7. While the Neepers were lounging, guests were in and out of the nearby jacuzzi, but no staff passed in front of the Neeper's immediate area. *See* SMF, ECF No. [33] at ¶¶ 9, 11; AMSF, ECF No. [43] at ¶¶ 9, 11. The Carnival employees were by the Red Frog Rum Bar. *See* SMF, ECF No. [33] at ¶ 11; AMSF, ECF No. [43] at ¶ 11.

Eventually, the Neepers began preparing to leave the seating area. *See* SMF, ECF No. [33] at ¶ 12. Just before departing, Plaintiff walked up to the next deck tier to unclip her towel from her chair while her husband stayed behind. *See id.* Plaintiff went up the right side of the three-step staircase "without issue." *Id.* at ¶ 13. After Plaintiff unclipped her towel, she began walking back

---

[2] While there is no dispute that the Neepers were sitting on the level with a jacuzzi, it is disputed whether the Neepers were sitting on the lowest level or the intermediate level of the seating area. *See* AMSF, ECF No. [43] at ¶ 6.

down the same staircase, using the handrail to her right, and then "stepped into water with her left foot as she came off the three-step staircase." *See id.* at ¶¶ 14, 16. "Plaintiff slid on the water and fell, landing on her right buttocks and left leg simultaneously." *Id.* at ¶ 17.

After the fall, Plaintiff noticed "a 'line of water' was 'running from under the [lounge] chair[s]' to the spot where she had slipped." *Id.* at ¶ 19 (alterations in the original) (quoting Plaintiff Theresa Neeper Dep. Tr. 87:18-90:24). However, Plaintiff observed no warning signs in the area, and no one reported an issue regarding the Deck 9 starboard terrace jacuzzi the day of the incident or the day before. *See* SMF, ECF No. [33] at ¶¶ 20, 23.

During the three years prior to the incident, three other passengers "slipped and fell on a wet substance" on the same API Resin flooring within a 50-foot radius from the spot where Plaintiff fell on January 18, 2023. *Id.* at ¶ 22.

In his Declaration, David Neeper attests that he personally saw that the area where his wife slipped "was made wet by water coming from a nearby hot tub." ECF No. [40-1] at ¶ 4. He "first noticed the water coming from the hot tub when [he] walked through that area well more than an hour before [Plaintiff] fell." *Id.* at ¶ 5. "And when Teresa fell, anyone could tell just by looking at the large volume of water that had come from the hot tub[,] that that amount of water had taken much longer than an hour to accumulate." *Id.* at ¶ 6.

## III.    LEGAL STANDARD

### A.  Rule 26 Initial Disclosures

Pursuant to Federal Rule of Civil Procedure 26(a), parties generally "must, without waiting for a discovery request, provide to other parties…the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses,

unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A). "The purpose of initial disclosures under Rule 26(a) is 'to accelerate the exchange of basic information about the case' and to facilitate 'early disclosure…of…types of information that have been customarily secured early in litigation through formal discovery.'" *Spano v. Satz*, Case No. 09-60255, 2010 WL 11515694, at *3 (S.D. Fla. Jan. 29, 2010) (quoting Adv. Com. Notes, 1993 Amendment).

"Rule 26(e) requires parties to timely supplement disclosures made under Rule 26(a) or through responses to interrogatories or requests for production 'if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Water v. HDR Engineering, Inc.*, Case No. 8:08-CV-2446-T-27TBM, 2011 WL 13176484, at *6 (M.D. Fla. May 11, 2011) (quoting Fed. R. Civ. P. 26(e)(1)(A)). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x. 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

While the question of whether a party's non-disclosure is substantially justified or harmless falls within the district judge's sound discretion, the Court is guided by the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *U.S. ex rel. Bane v. Breath Easy Pulmonary Services, Inc.*, No. 8:06–cv–40–T–33,

2009 WL 92826, at *3 (M.D. Fla. Jan. 14, 2009) (quoting *Two Men & a Truck Int'l Inc.*, Case No. 4:08–cv–67–WS/WCS, 2008 WL 5235115, at * 2 (N.D. Fla. Oct. 20, 2008)); *see Schiffbauer v. Wal-Mart Stores, Inc.*, Case No. 22-CV-60655, 2023 WL 5658818, at *2 (S.D. Fla. Apr. 14, 2023) (noting "district courts have broad discretion in determining whether a party's failure to comply with Rule 26(a) was substantially justified or harmless") (citing *Ward v. Carnival Corp.*, No. 17-CV-24628, 2019 WL 1228063, at *3 (S.D. Fla. Mar. 14, 2019)).

### B. Sham Affidavits

Federal Rule of Civil Procedure 56(c) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed R. Civ. P. 56(c). Pursuant to the "sham affidavit" rule, "an affidavit may be stricken as a sham when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Rodriguez v. Jones Boat Yard, Inc.*, 435 F. App'x 885, 887 (11th Cir. 2011) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986)). "However, an affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact.'" *Bryan v. U.S. Steel Corp.*, 428 F. App'x 895, 896-97 (11th Cir. 2011) (quoting *Van T. Junkins and Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)). The decision whether an affidavit is a sham is within the Court's discretion but, given the "harsh effect" of striking a declaration or affidavit, the sham affidavit "rule should be applied 'sparingly.'" *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306-07 (11th Cir. 2016) ("[A] district court's decision to strike an affidavit as a 'sham' is reviewed for

abuse of discretion.") (quoting *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) and (citing *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1337, 1342–43 (11th Cir. 2000)).

### C. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant.") (citing *Singletary v. Vargas*, 804 F.3d 1174, 1176 n.2 (11th Cir. 2015)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the

district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## IV.    DISCUSSION

### A.    Motion to Strike Mr. Neeper's Declaration

As noted above, David Neeper's Declaration attests that the floor where Plaintiff slipped "was made wet by water coming from a nearby hot tub." ECF No. [40-1] at ¶ 4. Mr. Neeper's basis for this conclusion was that he "first noticed the water coming from the hot tub when [he] walked through that area well more than an hour before [Plaintiff] fell." *Id.* at ¶ 5. Mr. Neeper also asserts that based on the volume of water present when Plaintiff slipped, "anyone could tell…that amount of water had taken much longer than an hour to accumulate." *Id.* at ¶ 6.

Carnival makes several arguments as to why the Declaration should be stricken. Carnival first contends that "Plaintiff never served Rule 26 disclosures." ECF No. [50] at 1. According to Carnival, not only did Plaintiff wait until she responded to interrogatories before first disclosing Mr. Neeper was a potential witness, the responsive disclosure regarding Mr. Neeper was insufficient. *See id.* at 3-4. Notwithstanding Mr. Neeper's alleged knowledge of the hot tub leak, Plaintiff's response to Carnival's interrogatory merely stated that "David Neeper was present at the time of the incident. Mr. Neeper also has knowledge of my injuries and how my injuries have affected my life." *Id.* (quoting ECF No. [30-1] at 140). Carnival claims Plaintiff's disclosure regarding Mr. Neeper was deficient because the response failed to disclose "that Mr. Neeper had knowledge of the incident area being wet prior to Plaintiff's fall." ECF No. [50] at 4. According to Carnival, merely being present during the incident is "significantly different than [Mr. Neeper] having knowledge of the water flowing out of the hot tub prior to the incident." *Id.* Carnival claims Plaintiff's failure to disclose those additional details regarding Mr. Neeper's knowledge

substantially prejudiced Carnival because "Carnival was unable to depose [Mr. Neeper] on [the hot tub leak] due to its lack of knowledge that Mr. Neeper was present for an hour prior to the incident." *Id.* at 4-5. Given the substantial prejudice Carnival would suffer, it requests the Declaration be stricken.

Alternatively, Carnival argues that, at the very least, paragraph 6 of Mr. Neeper's Declaration should be stricken as it is not based on personal knowledge. ECF No. [50] at 5. In paragraph 6, Mr. Neeper asserts, "anyone could tell just by looking at the large volume of water that had come from the hot tub that that amount of water had taken much longer than an hour to accumulate." ECF No. [40-1] at ¶ 6. Carnival contends "[a]ssuming that people could tell how long water has been stagnant in an area based on the size of the puddle is a conclusory argument not based on personal knowledge." ECF No. [50] at 5.

Finally, Carnival argues the Declaration is a sham affidavit because the alleged facts contained within the Declaration are argumentative and are only proffered in a "desperate attempt to create an issue of material fact." *Id.* at 1.

Plaintiff responds first by addressing the alleged Rule 26 violations and asserts that "Neeper did in fact serve an initial Rule-26 disclosure on Carnival—and she served it timely—on October 17, 2023—the same day Carnival served its initial disclosures on [Plaintiff]." ECF No. [57] at 1. Plaintiff points out that her initial disclosure lists David Neeper as the first individual likely to have discoverable information. *See* ECF No. [58-1].

Plaintiff also responds that even without the properly submitted initial disclosure, there is still no Rule 26 violation because Plaintiff's response to Carnival's third interrogatory was sufficient. *See* ECF No. [57] at 2. However, if the response was indeed deficient, Plaintiff contends

Carnival's challenge is untimely as it did not "raise its objections within fifteen days of receiving the Plaintiff's responses." *Id.* at 2.

Plaintiff maintains there is no basis for concluding Carnival "has been unfairly sand-bagged by David Neeper's surprise Declaration testimony" because it was not a surprise. ECF No. [57] at 3. Plaintiff points to her Complaint where she stated, "Mr. Neeper had noticed the leak at least an hour before Mrs. Neeper's accident, and sometime after the accident, Mr. Neeper returned and photographed the leak." *Id.* (quoting ECF No. [1] at ¶¶ 11, 22). Given the Complaint's allegation, Plaintiff contends there is no reasonable basis to conclude that she hid the ball regarding Mr. Neeper's knowledge of the hot tub leak. *See id.*

Moreover, Plaintiff contends that "the sham-affidavit rule simply doesn't apply" and the rule only allows a court to disregard an affidavit or declaration at summary judgment where it "contradicts without explanation, previously given clear testimony." *Id.* at 4. (internal citations and quotations omitted). Because "David Neeper's declaration testimony contradicts nothing," there are no reasonable grounds to treat Mr. Neeper's declaration as a sham affidavit. *Id.*

Regarding Carnival's alternative argument to strike just paragraph 6 of the Declaration, Plaintiff argues that Carnival is merely quibbling over the phrasing of her husband's assertion. *See id.* Plaintiff argues that the phrase "anyone could tell" in paragraph 6 is a figurative expression intended to express the amount of confidence Mr. Neeper had in concluding it would have taken at least an hour for the amount of water he observed to leak from the hot tub and accumulate at the base of the stairs. ECF No. [57] at 4. By saying "anyone could tell," "Mr. Neeper is really saying, 'And when Teresa fell, [it was obvious to me]—just by looking at the large volume of water that had come from the hot tub—that that amount of water had taken much longer than an hour to accumulate.'" *Id.* (alterations in the original). By reading those three words as a figure of speech,

Plaintiff claims it becomes self-evident that Mr. Neeper's opinion was based on his first-hand observations about the amount of water that had accumulated where Plaintiff fell. *Id.* at 4-5. However, even if paragraph 6 was not based on Mr. Neeper's personal knowledge, the Court should only strike the impermissible portion of the Declaration rather than strike it in its entirety. *See id.* at 5.

The Court finds there is no basis for striking the Declaration based on Plaintiff's alleged Rule 26 violation. First, as Plaintiff correctly points out, she properly served Carnival her initial disclosure on October 17, 2023. *See* ECF No. [58-1]. The disclosure listed Mr. Neeper as the first individual likely to have discoverable information. *Id.* While Plaintiff's initial disclosure does not indicate what Mr. Neeper knows about the case, the Court finds that Plaintiff's response to Carnival's interrogatories satisfied Plaintiff's burden to supplement the subjects of information known to Mr. Neeper. In her response to Carnival's third interrogatory, Plaintiff indicated that Mr. Neeper "was present at the time of the incident" and had knowledge regarding Plaintiff's injuries. ECF No. [30-1] at 139-40. Although Plaintiff's response did not specifically indicate that Mr. Neeper had previous knowledge of water flowing from the hot tub, Carnival was made aware that Mr. Neeper had knowledge of the incident, and thus, knowledge of circumstances surrounding the incident. Plaintiff could not predict what specific subject matter surrounding the incident would be important to Carnival. Upon learning Mr. Neeper had personal knowledge about the circumstances of Plaintiff's slip and fall, the onus shifted to Carnival to determine the extent of Mr. Neeper's knowledge.

Even assuming, however, that Plaintiff's initial disclosure and interrogatory response failed to satisfy her Rule 26 disclosure obligations, the Court must still determine whether the violation was substantially justified or harmless before it strikes the Declaration. Given the allegations in

the Complaint, the Court finds that, to the extent Plaintiff failed to adequately disclose Mr. Neeper's knowledge about the incident, such failure was harmless. In the Complaint, Plaintiff alleges on two separate occasions, "Mr. Neeper had noticed the leak at least an hour before Mrs. Neeper's accident, and, sometime after the accident, Mr. Neeper returned and photographed the leak." ECF No. [1] at ¶¶ 11, 22. Those assertions provided Carnival sufficient notice that Mr. Neeper had knowledge of the hot tub leak and how long the leak may have existed. Since the Complaint obviated any surprise regarding Mr. Neeper's knowledge, there is no basis for Carnival to claim it did not depose Mr. Neeper because it was unaware he had knowledge regarding issues related to the hot tub leak and constructive notice.[3] Therefore, Carnival was not harmed by Plaintiff's alleged Rule 26 violation.

The Court also finds the Declaration is not a sham affidavit. For a Court to exclude an affidavit on summary judgment, the affidavit must "contradict[ ], without explanation, previously given clear testimony." *Rodriguez*, 435 F. App'x at 887 (quoting *Tippens*, 805 F.2d at 954). After a review of the record, the Declaration does not contradict any previously given testimony. Neither Plaintiff nor Mr. Neeper testified that Mr. Neeper was unaware of the leaking hot tub before the incident. Mr. Neeper was never deposed, so there is no basis for finding that he contradicted his previous testimony. The Declaration is also consistent with the Complaint. Carnival therefore attempts to argue that the Declaration conflicts with Plaintiff's prior deposition testimony because Plaintiff testified that "she was in the area for 'quite a while' and did not see any water on the deck during that time" ECF No. [59] at 2. However, no contradiction exists as it is neither illogical nor

---

[3] The Court sees no need to seriously consider the remaining factors for excluding evidence based on a Rule 26 violation given that there was no surprise in the first place. However, the remaining factors do not favor Carnival. Plaintiff preemptively cured any surprise by disclosing the extent of Mr. Neeper's knowledge in the Complaint. Moreover, because the curative disclosure was made in the initial pleading, there would be no disruption of the trial and no need for Plaintiff to explain any failure to properly disclose these facts.

contradictory that Mr. Neeper noticed the water leaking from the hot tub an hour before, but Plaintiff did not. Plaintiff's knowledge and Mr. Neeper's knowledge may not be coextensive, and thus, it is entirely possible that Plaintiff was not as observant as her husband. Because the Court concludes the Declaration does not contradict any prior testimony, it is not a sham affidavit.

Regarding Carnival's final argument, the Court agrees that Mr. Neeper's statement in paragraph 6 of the Declaration should be stricken. Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Any portion of an affidavit that does not comply with Rule 56 may not be considered for purposes of summary judgment." *Ulysse v. Waste Mgmt. of Fla.*, No. 11-80723-CIV, 2013 WL 12177350, at *2 (S.D. Fla. Sept. 9, 2013). Improper affidavits "which set forth conclusory arguments rather than statements of fact based on personal knowledge… may be subject to a motion to strike." *Thomas v. Ala. Council on Hum. Rels., Inc.*, 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003).

The statement in paragraph 6 is speculative and not based on personal knowledge as Mr. Neeper did not personally observe the puddle accumulate over the course of the hour. Moreover, Mr. Neeper does not explain how he reached the conclusion that it would take more than an hour for a puddle of that size to form. He does not describe the size of the leak or the speed of the water that flowed from the hot tub to form the puddle. Because paragraph 6 is not based on sufficient personal knowledge, the Court strikes that portion. However, the remaining portions of the Declaration are based on personal knowledge and may be relied upon. *See Thomas*, 248 F. Supp. 2d at 1112 ("[I]f an affidavit contains some improper material, the court need not strike the entire

affidavit, rather it may strike or disregard the improper portions and consider the remainder of the affidavit.").

### B.   Motion for Summary Judgment

Carnival seeks summary judgment on Plaintiff's claims for negligent failure to maintain and negligent failure to warn because (1) Carnival neither had actual nor constructive notice of the allegedly dangerous condition that caused Plaintiff's injuries; and (2) Carnival's failure to warn was not the proximate cause of Plaintiff's injuries.

The parties do not dispute that Plaintiff's injuries occurred on navigable waters. *See* ECF No. [1]; ECF No. [34] at 6. "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006) (citing *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 999 (11th Cir. 1992)).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous

condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bahamas) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at \*4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller*, 2016 WL 4809347, at \*4. Moreover,

> [t]o establish the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at \*4 (S.D.

Fla. Apr. 2, 2013) (alteration added; citations omitted).

*Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

### i.  Notice of Dangerous Condition

Carnival does not dispute that a dangerous condition (i.e., the puddle caused by the hot tub leak) existed for the purposes of summary judgment. *See* ECF No. [34] at 7; ECF No. [42] at 1. However, to prove a defendant owed a duty of care, a plaintiff generally must first establish that the defendant had actual or constructive notice of the dangerous condition. *See Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) ("For a duty to arise, Carnival must 'have had actual or constructive notice of the risk-creating condition'") (quoting *Keefe*, 867 F.2d at 1322).

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (citing *Keefe*, 867 F.2d at 1322; *Rodgers v. Costa Crociere, S.P.A.*, No. 08-CV-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)).

Carnival argues that it is entitled to judgment on Counts One and Two of the Complaint because there is no evidence Carnival had either actual or constructive notice of the dangerous condition. In support of its actual notice argument, Carnival contends that "[n]o one reported a puddle or stream to a Carnival employee," nor were there any "Carnival employees in the immediate area of the puddle." ECF No. [34] at 9. The closest employees were working at a rum

bar some distance away and did not walk by in the hour between when Mr. Neeper allegedly first noticed the leak to when Plaintiff slipped and fell. *See id.*

Carnival contends Plaintiff has also failed to proffer sufficient evidence of constructive notice under either standard. Carnival argues Plaintiff has not provided any direct evidence of how long the water was on the deck before Plaintiff slipped and fell, and the only evidence in the record indicates the puddle only existed for a few minutes. *See id.* at 10. Because Plaintiff "did not observe water on the deck while she was lounging in her pool chair" or when she ascended the staircase but did notice a "pretty large" puddle in front of the staircase just before she slipped and fell, the puddle must not have existed for long. *Id.* at 10-11. Carnival asserts that (1) "[t]he puddle was colorless and not dirty; (2) there was no evidence of any footprints around the puddle; (3) and Plaintiff saw that the puddle was caused by water flowing in a line from under the occupied pool chairs" which further supports its contention that the dangerous condition only existed for a few minutes before Plaintiff slipped. *Id.* at 11. Carnival points out that crewmembers were not designated to regularly monitor the area such that Carnival would have been reasonably expected to have discovered the leak in a more timely manner. *See id.* at 11.

Moreover, Carnival argues that Plaintiff cannot establish constructive notice by relying on evidence of substantially similar incidents. Carnival acknowledges that while there were three prior slip and falls on the same area of the ship, those incidents involved rainwater or another undisclosed source that was not hot tub water. *See* ECF No. [34] at 13. Thus, Carnival concludes the prior incidents were generally similar, not substantially similar. *See id.*

Plaintiff responds that Carnival's lack of notice defense fails because Mr. Neeper's Declaration that he "first noticed the water coming from the hot tub… an hour before [Plaintiff] fell" defeats any claim that Carnival was not on constructive notice of the dangerous condition.

ECF No. [42] at 2 (quoting Decl. David Neeper at ¶¶ 4-6, ECF No. 40-1). Moreover, given the length of time the puddle was present, the Carnival employees' proximity to the incident, and that this was a "busy and popular area sporting two hot tubs and a pool [ ] with cocktail bars," Carnival had more than a sufficient opportunity to either cure the dangerous condition or at least warn of the dangerous condition before Plaintiff slipped and fell. *Id.* at 2-3. Additionally, Plaintiff points out that the night before the incident, Carnival's nightshift report listed three special projects involving the scrubbing of the floors near the Blue Iguana Bar and the Red Rum Frog Bar. *See id.* at 4. Because Carnival indicated on January 17, 2023, that the area near where Plaintiff slipped required special scrubbing, Plaintiff argues one can reasonably assume the leak from the hot tub had been present all day on January 18, 2023, yet none of Carnival's employees thoroughly researched the potential issue despite arguably having notice there was a problem. *See id.*

Even if Carnival did not acquire constructive notice due to the length of time the puddle existed, or because of the notations on the nightshift report, Plaintiff argues the three prior similar slip and fall incidents in the same area provided Carnival with constructive notice "that it had a problem with the slip resistance of the flooring in this area, which given the proximity of a swimming pool and hot tubs, can be expected to frequently get wet." *Id.*

The Court finds there is sufficient record evidence that the puddle existed long enough to create a genuine issue of material fact that Carnival had constructive knowledge of its potential danger. First, Mr. Neeper testified that he first noticed the hot tub leak more than an hour before Plaintiff slipped and fell. Courts in this district have routinely found that evidence showing the dangerous liquid or substance was on the floor for more than twenty to thirty minutes may support a reasonable inference of constructive notice. *See Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 921 (11th Cir. 2020) (acknowledging that while there is no "bright-line, time-based

Case No. 23-cv-23125-BLOOM/Torres

rule with respect to constructive notice," "[i]n prior cases, [the Eleventh Circuit] ha[s] concluded a genuine issue of material fact exists as to whether a shipowner 'ought to have known of the peril to its passenger' when the unsafe condition existed for between fifteen and twenty minutes.") (quoting *D'Antonio*, 785 F. App'x at 798); *Marsh v. Celebrity Cruises, Inc.*, Case No. 1:17-cv-21097-UU, 2017 WL 6498107, at *3 (S.D. Fla. Dec. 13, 2017) (finding that "there [was] evidence that the liquid was present on the floor for at least thirty minutes before Plaintiff's fall and therefore, [ ] Celebrity had constructive knowledge of its existence."); *Thomas v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1189, 1193 (S.D. Fla. 2016) ("a plaintiff may prove constructive notice if he shows that a dangerous condition existed on the floor for a sufficient length of time, which Florida courts have found to be 15-20 minutes."); *cf. Hill v. Ross Dress for Less, Inc.*, No. 12–23368–CIV, 2013 WL 6190435, at *4 (S.D. Fla. Nov. 26, 2013) (addressing a non-cruise ship case, but still concluding twenty minutes or more was sufficient to support an inference of constructive notice).

Plaintiff does not merely rely on her husband's Declaration to prove constructive notice but offers testimony that there were employees working at the Red Rum Frog Bar just a "couple of steps" away from where she fell. *See* ECF No. [30-1] at 40.[4] Plaintiff's testimony is buttressed by the photograph Carnival submitted showing that the Red Rum Frog Bar is mere feet away from where the incident occurred. *See* ECF No. [31-1] at 10; ECF No. [33] at 4; ECF No. [42] at 3. Given the employees' proximity to the incident and the testimony regarding the length of time the puddle was present, a reasonable juror could conclude that Carnival's employees should have known about the dangerous condition. *See Plott v. NCL America, LLC*, 786 F. App'x 199, 203 (11th Cir. 2019); *Haiser v. MSC Cruises (USA) Inc.*, Case No. 18-cv-60964-RS 2019 WL

---

[4]      Q: But you do recall you may have observed a Carnival employee by the bar area, so that
        would be a couple of steps down from where you and Mr. Neeper were; is that right?
        A: Yes
ECF No. [30-1] at 40.

4693200, at *5 (S.D. Fla. Aug. 9, 2019) ("A reasonable factfinder could conclude that crewmembers knew or should have known about the presence of water on floor since they were in the immediate vicinity and based on the amount of time the water was there."); *Williams v. Carnival Corp.*, 440 F. Supp. 3d 1316, 1322 (S.D. Fla. 2020) (same).

Finally, Plaintiff also testified that she observed "a 'line of water' 'running from under the [lounge] chair[s],'" forming a "pretty large" puddle where she slipped and fell. ECF No. [30-1] at 51, 89, 91. Although the record fails to reflect how rapid the water was flowing from the hot tub to the foot of the staircase, the Court is persuaded that Plaintiff's testimony further supports the inference that the water was able to accumulate under the stairs for a significant period of time. Accordingly, Plaintiff has established a reasonable basis for the jury to infer that the puddle existed for a sufficient length of time and to find that Carnival had constructive notice.[5]

### ii. Failure to Warn

Carnival argues that even if Plaintiff proves Carnival had notice, Plaintiff cannot establish that Carnival's alleged failure to warn was the proximate cause of her injuries. Carnival contends that Plaintiff "saw and appreciated" the puddle before stepping into it. ECF No. [34] at 14. Given that "the residual risks of stepping into a puddle are open and obvious," a warning about the puddle would have been superfluous. *Id.* In other words, if the obvious risk of a puddle was not enough to stop Plaintiff from stepping into it, no warning would have convinced her to avoid the allegedly dangerous condition. Therefore, Carnival maintains that its failure to warn cannot be the proximate cause of Plaintiff's injuries. *See id.*

---

[5] Because the Court concludes that an issue of material fact exists as to whether Carnival had constructive notice of the dangerous condition, the Court need not address Plaintiff's argument that Carnival had constructive notice due to the three purportedly substantially similar slip and falls in the same area of the ship.

Plaintiff responds that Carnival's failure to warn argument hinges on a faulty premise. According to Plaintiff, Carnival misread her deposition. Plaintiff "never said she stepped into the 'pretty large' area of the floor that was wet." ECF No. [42] at 5. Plaintiff notes the relevant portion of Plaintiff's testimony as follows:

> Q. When you were coming down these mid stairs, did you observe any water on this deck floor that I'm pointing my mouse—
> A. Yes.
> Q. Okay. How big was it?
> A. It was pretty large.

*Id.* (quoting Neeper Dep. 49:5-13). Plaintiff argues that without knowing precisely where the questioner was pointing the mouse in the videotaped deposition, the Court cannot assume the questioner was pointing to where Plaintiff slipped. *See* ECF No. [42] at 5. Thus, the Court cannot conclude that Plaintiff observed and appreciated the risk of the puddle of water moments before she stepped into it. Plaintiff argues that it was only after the fall "that Neeper noticed that a 'line of water' had flowed from the hot tub under the chairs." *Id.* at 6. Therefore, because there is insufficient record evidence that Plaintiff knowingly stepped into the puddle, Carnival's argument that a warning would have been superfluous must fail. *Id.*

Plaintiff maintains that even if she knew the puddle was there, Carnival still cannot prove a warning would have been superfluous. Plaintiff argues that, at best, the evidence merely shows Plaintiff was willing "to step onto a floor she knew was *wet*, but not onto a floor she knew was *slippery*." *Id.* (emphasis in the original). Plaintiff asserts that experience teaches that only some floors are dangerously slippery when wet, while others are perfectly safe. The danger is the slipperiness of the floor, not whether it is wet or dry. *Id*. Accordingly, Plaintiff contends her knowledge that the floor below the staircase was wet did not sufficiently apprise her of the

dangerous condition and, therefore, a warning by Carnival that the floor was slippery when wet still could have prevented Plaintiff's injuries. *See id.* at 7.

After reviewing the transcript of Plaintiff's testimony and the video of the deposition submitted by Carnival, the Court finds there is no genuine dispute whether Plaintiff saw the water she slipped on *at some point* before she stepped into it. Plaintiff attempts to argue that when she admitted she saw a pretty large amount of water as she descended the stairs, it is unclear, based on the deposition transcript alone, that the water the questioner was pointing to was the same water on which Plaintiff slipped. *See* ECF No. [42] at 5. However, as Carnival correctly points out, the video of the deposition shows that the water Plaintiff referenced during the deposition was the same puddle of water that caused her to slip and fall. *See* ECF No. [52]. During Plaintiff's deposition, while testifying where the puddle of water was located, the questioner is pointing to the bottom of the staircase on the right side, the same place Plaintiff indicated she fell. *See id.* Nevertheless, the record is unclear whether Plaintiff saw the water soon enough to appreciate the water's potential danger and avoid stepping into it. *See Hoover v. NCL (Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1256 (S.D. Fla. 2020) ("In deciding whether a dangerous condition is open and obvious, the Court must determine 'whether a reasonable person would have observed the condition and appreciated the nature of the condition.'") (quoting *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018)). There is a lack of follow up questions during the deposition indicating how soon Plaintiff saw the water before she stepped into it, nor is there undisputed evidence in the record of the condition of the water before Plaintiff stepped down and fell. As such, the fact that Plaintiff may have observed a puddle of water at some point before she slipped and fell is of limited evidentiary value.

While cruise ship operators have a duty to warn of known dangers, under the open and obvious doctrine, "[a] defendant cannot be liable for failure to warn if the risk-creating condition is open and obvious to a reasonable person." *Simone v. NCL (Bahamas) Ltd.*, 584 F. Supp. 3d 1206, 1213 (S.D. Fla. 2021) (citing *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 907 (11th Cir. 2017) ("If the cruise ship did not have notice of the danger or if the danger is open and obvious to a reasonable person, the ship has no duty to warn.")); *see Carroll v. Carnival Corp.*, 955 F.3d 1260, 1267 (11th Cir. 2020) ("The open and obvious nature of a dangerous condition negates liability for a failure to warn"). "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015). "Whether a danger is open and obvious is determined from an objective, not subjective point of view." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1346 (S.D. Fla. 2015). However, even if the condition is open and obvious, a plaintiff's claim will not be barred unless the *danger posed* is obvious. *See Malley*, 713 F. App'x at 908 ("To determine whether a condition is open and obvious, this Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition."); *Lebron v. Royal Caribbean Cruises, Ltd.*, Case No. 16-24687-Civ, 2018 WL 5113943, at *10 (S.D. Fla. Aug. 14, 2018) ("[T]he question is not whether a condition itself was open and obvious, but whether the condition posed an unreasonable danger that would not be open and obvious to a reasonable person.").

The Court does not find, as a matter of law, that the dangerous nature of the puddle of water was open and obvious. "For a purported danger to be 'open and obvious,' the condition must be observable and appreciable by a reasonable person," *Fadrag v. Carnival Corp.*, Civ. Act. No. 23-23503-Civ-Scola, 2024 WL 1908980, at *5 (S.D. Fla. Apr. 30, 2024) (citing *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016)). Although Plaintiff may have observed

the puddle before stepping into it, there is a material question of fact whether Plaintiff had a sufficient opportunity to appreciate the inherent risk of stepping into the puddle. For instance, if Plaintiff observed the water as she was stepping into it, then a reasonable person would not have been able to appreciate the risk and avoid the puddle. Accordingly, without more precise evidence about the moment in which Plaintiff observed the water, a reasonable juror could conclude that a reasonable person would not have had enough time to appreciate the risk of stepping into the puddle.

Moreover, even assuming Plaintiff had adequate opportunity to fully appreciate the risk of the puddle, the Court finds there is a material dispute whether a reasonable person could appreciate the *extent* of the danger simply by observing the puddle. *See Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318, 1329 (S.D. Fla. 2021) ("[E]ven though a plaintiff may be able to ascertain the danger of an open and obvious condition via her senses, she may not understand the extent of the danger."). In *Frasca v. NCL (Bahamas), Ltd.*, the Eleventh Circuit held that while it may have been open and obvious that a cruise ship deck was slicker than usual after it rained, the unreasonably slippery nature of the deck was not open and obvious. *See* 654 F. App'x at 952; *see also Andersen v. Royal Caribbean Cruises Ltd.*, 543 F. Supp. 3d 1346, 1355 (S.D. Fla. 2021) ("[W]hile the wetness of the floor may have been open and obvious to Plaintiff, there is evidence that the slipperiness of the floor was both unreasonable and not open and obvious."). Carnival faces virtually the same problem here. Plaintiff may have seen the puddle but still may not have been able to appreciate just how slippery that area of floor turned out to be. In Plaintiff's answer to Carnival's second interrogatory, she states that the leak from the hot tub caused a "constant flow of water mixed with oily sunscreen to flow across the deck." ECF No. [30-1] at 139.[6] Thus, the

---

[6] The Court may consider answers to interrogatories in deciding whether to grant or deny summary judgment. *See Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1148 (S.D. Fla. 2022) ("The

water Plaintiff slipped on was not just a stagnant puddle that may form after it rains. A reasonable juror could conclude that the mix of sunscreen oils and the constant flow of water potentially reduced the level of friction to such an extent that it caused the floor to become much more slippery than one would ordinarily expect when encountering a wet cruise ship deck.[7] *See Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d. 1189, 1194 (S.D. Fla. 2016) ("The Court finds there are disputed issues of material fact regarding whether a puddle consisting of a clear, gooey, slimy [liquid] substance on a deck is an open and obvious danger."); *Stewart v. Carnival Corp.*, 365 F. Supp. 1272, 1275 (S.D. Fla. 2019) (finding that a "five-by-five oily puddle of pool water was not open and obvious"). The unreasonably slippery nature of the water is further buttressed by the severity of Plaintiff's slip and fall. *See Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 250 (11th Cir. 2018) (concluding that although the wetness was open and obvious, the unreasonably slippery nature of the deck was not open and obvious, in part, because of "video footage showing that both of [plaintiff's] feet slipped completely out from under him in such a manner that a jury might find that the deck surface was unreasonably slippery"). There is no evidence that Plaintiff was running along the deck, racing down the stairs, or otherwise acting in a reckless manner. Rather, her testimony supports that she casually proceeded down the stairway while holding onto the handrail on her right-hand side, slipping and falling so hard that she broke her leg. *See* ECF No. [33] at ¶ 14. Thus, the Court finds that the dangerous condition of the puddle of water was not open and obvious and, therefore, may not serve as a bar to Plaintiff's failure to warn claim. As such, Carnival's Motion for Summary Judgment is denied.

---

non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor.").

[7] The Court also notes that the puddle was colorless. Therefore, there was no obvious visual indication that the water contained any substance that would make it more slippery than normal.

## V.       CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Carnival's Motion to Strike, **ECF No. [50]**, is **GRANTED in part and DENIED in part**.

2.   Carnival's Motion for Summary Judgment, **ECF No. [34]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 16, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

27